NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVELISSE ALAMO, | Civil Action No. 13-3847 (SDW) |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | September 3, 2014 |

**WIGENTON,** District Judge

Before this Court is Plaintiff Ivelisse Alamo's ("Plaintiff" or "Alamo") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Barbara Dunn's ("ALJ Dunn") denial of Alamo's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **AFFIRMS** ALJ Dunn's decision.

**FACTUAL HISTORY**

    A.  **Personal and Employment History**

Plaintiff is a 37-year-old mother of two. (R. 12, 14.) After attaining a high school degree, she worked as a factory inspector in 1994, as an office worker from 1997 to 2005, and as a payroll specialist from July 2006 until she was laid off in July 2007. (R. 14, 16.) Alamo alleged that she has been unable to work since September 1, 2008 due to her medical conditions. (Id.)

    B.  **Medical History**

Plaintiff was hospitalized for psychiatric reasons on two occasions prior to her alleged onset date. (R. 14.) In November 2004, she was admitted for five days after taking an overdose of pain medication. (Id.) Then, in March 2005, she underwent a ten-day psychiatric evaluation for failing to take her medication. (Id.; 287-290, 330.) Plaintiff returned to work full-time after each hospitalization. (Id.)

Alamo next sought psychiatric treatment on April 23, 2009 at the Mental Health Clinic. (R. 15.) Plaintiff complained of mood swings, anxiety, depression, irritability, anhedonia, sadness, and sleeplessness. (Id.) The treating psychiatrist noted Plaintiff exhibited symptoms of mild depression but was otherwise calm and coherent during the consultation. (Id.) Plaintiff was diagnosed with a mood disorder and prescribed medications such as Abilify, Ambien, and Ativan, which apparently controlled the symptoms related to her anxiety and depressive disorder. (Id.) Plaintiff did not experience side effects from taking any of these medications. (Id.)

On April 19, 2011, Plaintiff was examined by consulting psychiatrist Dr. Solomon Miskin, M.D. ("Dr. Miskin"). (R. 15.) Plaintiff reported "a history of mood swings and bouts with depression, anxiety, irritability and agitation;" but stated that her anxiety level had diminished with therapy and medication. (Id.) Dr. Miskin noted that while Plaintiff "displayed a somewhat anxious and dysphoric mood," she was "oriented, alert, cooperative, and coherent with

no overt evidence of thought disorder." (Id.) He opined that Plaintiff possessed average intelligence and her memory was capable of "recent, remote and immediate recall." (Id.) He conceded, however, that Plaintiff is "mildly limited in her ability to understand, remember and carry out simple instructions." (Id.) Nevertheless, Dr. Miskin diagnosed Plaintiff with "moderately severe chronic bipolar disorder without psychotic features" as well as "panic disorder without agoraphobia." (Id.)

In addition to her mental impairments, Plaintiff alleged that she suffers from debilitating back pain that prevents her from lying down on her back, sitting, or standing for more than fifteen minutes. (R. 14-15.) In an examination report dated February 17, 2009, Dr. Benjamin Sabido ("Dr. Sadibo") indicated Plaintiff would be unable to work until August 10, 2009 due to lumbar radiculopathy and hypertension. (R. 14; 298-301). On September 8, 2009, Dr. Changaramk Sivadas, M.D. ("Dr. Sivadas") evaluated Plaintiff and found that she had "normal range of motion in the lumbar spine and no focal neurologic signs." (R. 15, 321-322.) Additionally, a lumbar x-ray taken that same day revealed Plaintiff's spine alignment, vertebral height, and disc spaces were normal. (R. 326)

### C. Testimonial History

In her testimony before ALJ Dunn on March 4 and September 26, 2011, Plaintiff explained that her bipolar disorder impedes her from getting along with others, making friends, and attending social gatherings, but also stated that she talks on the phone daily, travels, and enjoys going to the movies. (R. 21-31; 33-36) Plaintiff denied she took an overdose of pain medication in an attempt to commit suicide; rather, she claimed she took the pills to ease her severe headaches and pressure. (R. 24.)  Lastly, in a written statement dated August 7, 2009,

Plaintiff indicated that she was able to drive, cook, clean, do laundry, shop for groceries, as well as feed, bathe, dress, and play with her one-year-old daughter. (R. 159-174.)

Rocco Meola ("Meola"), a vocational expert, also testified at the September 26, 2011 hearing. (Id.) ALJ Dunn asked Meola to list potential employment opportunities for a hypothetical individual with Plaintiff's unique medical conditions, age, experience, education, and previous work experience. (R. 39.) Meola opined that the hypothetical individual could perform "light work ... [with] one-to-two step instructions [and] occasional public contact." Given such limitations, Meola explained that Alamo would not be able to perform her past relevant work, but could transition to a new job as a "microfilm mounter, sorter, or sealing machine operator." (Id.) According to Meola, there are approximately 1,200 of these types of jobs in the northern New Jersey region, and in excess of 40,000 of them exist nationwide. (Id.) However, in Meola's view, if the hypothetical claimant would be off-task twenty percent of the time, i.e. "ten minutes out of every 60-minute hour," she would be unable to "work in the competitive labor market." (R. 40.)

**PROCEDURAL HISTORY**

On July 7, 2009, Alamo applied for SSDI benefits. (R. 9; 119-125.) The Commissioner denied her claim at the initial and reconsideration stages. (Id.) Subsequently, Alamo requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 14, 2011 and September 26, 2011. (Id.) On October 25, 2011, ALJ Dunn issued a decision finding that while Plaintiff's impairments were severe enough to preclude her from performing her prior relevant work, she had the residual functional capacity to perform light work and was therefore not disabled. (R. 17.) Alamo appealed the ALJ's decision, and her request for review was denied. (Pl. Br. 2.) Subsequently, Alamo filed this appeal. Alamo alleges that contrary to the ALJ's

findings, the evidence in the record establishes her entitlement to disability benefits. (Id. at p. 9.) Plaintiff seeks a reversal of the ALJ's decision, or in the alternative, a remand and order for a new hearing. (Id.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479

(3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

The burden rests solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5). To do so, the claimant must demonstrate that he is unable to "engage in any substantial gainful activity ("SGA") due to a medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [also], considering his age, education, and work experience, [unable to] engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C.A. § 423(d)(2)(A).

Pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 7, the Social Security Administration ("SSA") utilizes a five-step sequential analysis to determine disability. See 20 C.F.R. § 416.920; see also Cruz, 244 F. App'x. at 479. "The claimant bears the burden of proof for steps one, two, and four and the burden shifts to the Commissioner for the fifth step—no party bears the burden for step three." Fuller v. Astrue, CIV.A. 10-4133, 2011 WL 2550180 (E.D. Pa. June 23, 2011). A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. See 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. See id. Contrarily, if an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis. See id.

The primary issue in this case is whether the Commissioner's decision is supported by substantial evidence. Specifically, Alamo raises three issues on appeal: (1) there was no meaningful analysis at step three of the disability analysis; (2) the RFC determination is not supported by substantial evidence; and (3) the Commissioner did not satisfy his burden of proof at step five.

**A. Step Three: Whether Alamo's combination of impairments match or are medically equal to a listed impairment.**

At step three, the ALJ determines whether the claimant's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. §404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). The listed impairments are presumed to be severe enough to preclude any gainful work. Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." Knepp, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).

Here, ALJ Dunn found that Alamo suffers from a combination of the following moderately severe impairments: bipolar disorder, mood disorder, depression, lumbar radiculopathy, back arthralgia, and hypertension. (R. 11.)  However, ALJ Dunn determined that the evidence did not establish that Alamo's impairments, individually or in combination, meet or equal the severity of a listed impairment. Alamo argues that the ALJ's discussion of the listed impairments is too conclusory, fails to fully develop the record, and is therefore not supported by substantial evidence. (Pl. Br. 10-17.)

1. **Alamo's back problems.**

Plaintiff avers that ALJ Dunn erred in finding that Plaintiff's alleged back problems did not meet or equal the listed impairment "Disorders of the Spine" as described in Section 1.04A. (R. 12)  For an impairment to be considered a Disorder of the Spine, there must be medical evidence of the following neurological deficits: "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness . . .) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . ." (R. 12); Section 1.04A. ALJ Dunn concluded that none of these neurological problems were reported in Plaintiff's medical history. (Id.)

Plaintiff bears the burden of providing evidence to show that her impairment or combination of impairments match or equal that of the listed impairments. Bowen v. Yuckert, 482 U.S. 137, 138 (1987). ALJ Dunn observed that, despite Alamo's complaints, Dr. Sivadas found that Alamo had a "normal range of motion in the lumbar spine and no focal neurologic signs." (R. 15.)  Additionally, the September 8, 2009 lumbar x-ray showed Alamo to have intact disc spacing, normal lumbar spine alignment, normal heel-to-toe walk, and normal straight-leg

raising, both while standing and sitting. (R. 321.) Although Plaintiff assigns error to ALJ Dunn's conclusion, she has offered no citation to the record nor presented any further evidence before this Court that negates Dr. Savidas' report. Even Dr. Sadibo, who diagnosed Plaintiff with lumbar radiculopathy, did not specify that that condition is characterized by any of the requisite neurological deficits listed in Section 1.04A. (R. 15.) Therefore, this Court finds that ALJ Dunn fully developed the record and properly concluded that Plaintiff's back ailments did not match or were medically equivalent to the listed impairment.

**2. Alamo's mental disorders.**

Plaintiff next contends that the ALJ erroneously found that her bipolar disorder, mood disorder, and depression did not meet or equal the impairments listed in §12.04. (Pl. Br. 12-16.) Specifically, Plaintiff argues that the ALJ's analysis of §12.04A is too conclusory and fails to fully develop the record, and that the ALJ ignored credible evidence in her §12.04B analysis. (Pl. Br. 13-14.)

*a. §12.04A*

ALJ Dunn concluded Alamo did not meet the requirements of §12.04A because she failed to satisfy her burden to proffer medically documented proof of at least four of the following conditions: anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, or hallucinations, delusions, or paranoid thinking. (R. 12.) In support, ALJ Dunn considered medical notes from Plaintiff's psychiatric evaluations in 2009 and 2011 that indicated that Alamo was "oriented, alert, cooperative, and coherent with no overt evidence of thought disorder." (R. 15.) The ALJ also noted that Plaintiff denied any auditory, visual, or

9

tactile hallucinations, homicidal/suicidal ideation, plan or intent. (Id.) Furthermore, ALJ Dunn observed that although Alamo "complained of alleged mood swings, depression, anxiety, sadness, irritability, anhedonia, and sleep disturbance[,]" progress notes from her treating psychiatrists revealed that these conditions were moderately severe and were alleviated with medication. (Id.) These finding are substantially supported by the record evidence. Therefore, this Court finds no error in ALJ Dunn's examination of the criteria listed in §12.04A.

### b. *§12.04B*

To satisfy §12.04B, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation amounting to either three episodes within one year or, in the alternative, an average of once every four months, each lasting for at least two weeks. See 20 C.F.R. § 404, Subpart P, Appendix 1. ALJ Dunn found the evidence showed Plaintiff's daily living was moderately restricted by her symptoms. (R. 12.)

Plaintiff asserts that ALJ Dunn exaggerated Plaintiff's abilities, did not consider the assistance she receives from her friend, and failed to fully explore the effects of her two episodes of decompensation. (Pl. Br. 13-17.) Regarding Alamo's physical abilities, the ALJ properly relied on the Plaintiff's own written testimony that she was able to drive, prepare simple meals, do laundry, shop, and care for her two children, including a one-year old child. (R. 12, 13, 159-174.) Similarly, ALJ Dunn found Plaintiff faced moderate difficulties in social functioning. (R. 12.) The ALJ observed that although Plaintiff alleged difficulty getting along with others, Plaintiff's own testimony that she enjoyed talking on the telephone, reading, watching movies,

10

and was able to leave the house on her own, use public transportation, shop, and drive a motor vehicle, was indicative of social ability. (Id.; R. 153-55, 161-62, 318.)

Also, contrary to Plaintiff's assertion, the ALJ acknowledged that Alamo experienced two episodes of decompensation, as she was hospitalized on two occasions prior to her alleged onset date. (R. 13.) The ALJ, however, found these incidents irrelevant to her analysis because Plaintiff was able to return to full-time employment for several years afterwards. Id. Plaintiff also takes issue with the ALJ's alleged failure to consider her abilities in light of the assistance she received from her friend, Evelyn Geigel. (Pl. Br. 16.) This argument is unpersuasive. In the Third Party Function Report completed by Ms. Geigel on August 7, 2009, she denied knowledge of Plaintiff's daily routine, abilities to attend to personal care, or complete house work. (R. 151-55.)

Lastly, Plaintiff accuses the ALJ of ignoring her suicide attempt. (Pl. Br. 17.) Yet, during her testimony before the ALJ, Plaintiff emphasized that she took too much of her mother's pain medication to ease her headaches and pressure, and not with the intent to commit suicide. (R. 24.) Accordingly, this Court finds that ALJ Dunn's conclusion that Plaintiff's mental impairments did not satisfy §12.04B is supported by substantial evidence.

**B. Alamo's Residual Functional Capacity.**

After the third step, but before considering the fourth step in the analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. § 404.1520(e). A claimant's RFC is defined as "[work that] an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); see also 20 C.F.R. § 404.1545(a).

Here, ALJ Dunn found that Alamo had the RFC to "perform less than full range of light work … because she is able to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently as well as other activities generally required from an exertional standpoint. Mentally, the claimant is able to perform tasks with 1 to 2 step instructions and she should have no more than occasional contact with the public." (R. 13.) In coming to this conclusion, ALJ Dunn considered all of the medical evidence on record, including expert opinions and Plaintiff's own testimony. (R. 11-17.)

Plaintiff's argument that ALJ Dunn deemed her capable of performing "light work" without proper explanation is unpersuasive in light of the record evidence. In determining Plaintiff had the "exertional" capability "to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently", ALJ Dunn relied upon Alamo's September 9, 2009 medical examination by Dr. Sivadas, which showed that Alamo had "a normal range of motion in the lumbar spine and no focal neurologic signs." (R. 14-15, 321-322.) ALJ Dunn further observed that a lumbar x-ray that was taken contemporaneously with that examination showed Alamo had normal spine alignment and disc spaces. (R. 15.)

In finding Plaintiff mentally capable of performing tasks with one-to-two step instructions, ALJ Dunn balanced Alamo's alleged problems getting along with others, making friends, and attending social gatherings with the fact that she talks on the phone daily, travels, and enjoys going to the movies. (R. 11, 160-167.) ALJ Dunn then discussed Dr. Miskin's report that Plaintiff was "oriented, alert, cooperative, and coherent with no overt evidence of thought disorder." (R. 15, 365-367.) In fact, Dr. Miskin found Alamo could follow three-step, rather than one-to-two step commands. (R. 366-367.)

In addition to Dr. Miskin's report, ALJ Dunn referenced evidence from the Mental Health Clinic which established that Plaintiff possessed a largely intact memory, an ability to perform simple calculations, normal fund of information, and average intelligence. (R. 15-16; 366-67.) Accordingly, ALJ Dunn conducted a sufficiently thorough analysis of Alamo's medical records in reaching her conclusion.

### C. Step Five: Whether Alamo is able to do any other work considering her RFC, age, education, and work experience

The fifth and final step of the analysis requires the Commissioner to determine whether the claimant is able to perform any work considering her RFC, age, education, and work experience. See 20 C.F.R. § 416.20(g). The burden of proof shifts to the Commissioner at step five to determine whether the claimant is capable of performing "other work". See 20 C.F.R. § 416.20(g); Plummer, 186 F.3d at 422. A vocational expert may assist the Court during this step of the analysis. See C.F.R. § 404.1566(e). The ALJ will generally consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, to determine whether there are any jobs in existence in the national economy that the claimant can actually perform. Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).

In the present case, ALJ Dunn found that, considering Plaintiff's RFC, age, education, and work experience, there are a significant number of jobs in the national economy she could perform. (R. 17.) In reaching this conclusion, ALJ Dunn relied on answers to hypothetical questions that were presented to vocational expert, Rocco Meola ("Meola"). (Id.) Meola testified that a hypothetical claimant with Alamo's physical and mental limitations could perform light and unskilled work required for occupations such as: Microfilm Mounter, Sorter, and Sealing Machine Operator. (Id.) Furthermore, the Meola testified that there are a significant number

13

these jobs available in both the national and local economy. (Id.) The ALJ then determined that Meola's testimony was consistent with the information contained in the DOT. (Id.)

Alamo argues that because the ALJ's construction of the hypothetical questions did not include all of Alamo's mental limitations, Meola's answers to those hypotheticals cannot constitute substantial evidence to support the ALJ's step five analysis. (Pl. Br. 25-31.) Specifically, Alamo argues (a) that her limitations cannot be encompassed by the mere description of "able to perform one-to-two step instructions in jobs where only occasional contact with the public was required," and (b) that Meola testified that Alamo could not perform the jobs cited as light and unskilled work if she would be off-task for 20% of the time or unable to concentrate for more than ten minutes per hour. (Pl. Br. 30-31.)

Regarding Alamo's first argument, because this Court has determined, in Part B, infra, that ALJ Dunn's RFC assessment is supported by all of the medical evidence on the record, this Court does not find error in Meola's consideration of that RFC in answering the hypothetical questions. With respect to Alamo's second argument, there is no medical evidence on the record to suggest that Alamo would be off-task for 20% of the time or unable to concentrate for more than ten minutes per hour, therefore that caveat is not germane to Alamo's actual limitations. Thus, this Court holds that substantial evidence supports ALJ Dunn's decision.

**CONCLUSION**

For the foregoing reasons, this Court **AFFIRMS** ALJ Dunn's decision.

**SO ORDERED.**

s/Susan D. Wigenton, U.S.D.J.

CC:  Madeline Cox Arleo, U.S.M.J.